1  Julie A. Vogelzang, State Bar No. 174411
   Emily T. Gates, State Bar No. 246980
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5

6  Attorneys for Defendant AmeriPride Services, Inc.

FILED

08 MAR 10 PM 12: 24

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____
                    DEPUTY

7              UNITED STATES DISTRICT COURT

8            SOUTHERN DISTRICT OF CALIFORNIA

9

LLOYD MARTIN, KIRK SWORD, DANIEL         Case No. '08 CV 0440 H JMA
10 GORE, individually, and on behalf of other
   similarly situated current and former          **DECLARATION OF LANCE
11 employees of AMERIPRIDE SERVICES,              WESTPHAL IN SUPPORT OF
   INC.,                                          DEFENDANT AMERIPRIDE SERVICES,
12                                                INC.'S NOTICE OF REMOVAL OF
            Plaintiffs,                           ACTION**
13

14 v.

15 AMERIPRIDE SERVICES, INC., DOES 1-5,

16          Defendants.

17         I, Lance Westphal, declare and state as follows:

18         1.      I am the Vice President, Regional Operations, of AmeriPride Services Inc.

19 ("AmeriPride"). I am submitting this declaration in support of AmeriPride's removal petition in the

20 above-captioned action. Through my employment with AmeriPride, I have personal knowledge of the

21 matters set forth below, or I am aware of them on information and belief, and if called to testify as a

22 witness, I could and would competently testify thereto.

23         2.      I am informed and believe that AmeriPride is incorporated in the State of Delaware and

24 has its principal place of business in Minnesota.

25         3.      AmeriPride is in the textile rental business and, as such, supplies businesses with

26 uniform rental, sales, and laundry services, and building maintenance products. AmeriPride conducts

27 business in more than 40 states.

28 ///

4.    AmeriPride has more employees in Minnesota than in any other state.

5.    AmeriPride's corporate headquarters are in Minnetonka, Minnesota. Except for me, all of the officers work in Minnesota. All corporate functions, including Information Technology, Human Resources, Accounting, and Payroll, operate out of Minnesota.

6.    I have reviewed and am familiar with the collective bargaining agreements for those Customer Service Representatives ("CSR") who work at unionized facilities in California. I have also reviewed and am familiar with payroll data related to the non-unionized Los Angeles branch facility. Based on my review of compensation data for current CSRs, as well as my experience overseeing CSRs from a management perspective over the last four years, I believe and am informed that a good faith conservative estimate of the average hourly rate is in the $15-17 range. Moreover, based on a review of the personnel file of the named plaintiffs in this action, it appears that when Daniel Gore was terminated, in his final paycheck, he was compensated at a rate of over $23.00 per hour, Lloyd Martin was hired at a rate of $700 per week (which equates to $17.50 per hour for a 40-hour week), and Kirk Sword is compensated at a rate of 10% commission. Based on a review of payroll records, in the pay period ending December 22, 2007, Lloyd Martin was compensated at over $17.50 an hour, and Kirk Sword was compensated at over $16.00 an hour.

7.    I am informed and believe that plaintiffs have alleged that the class has more than 500 putative members. While discovery and investigation are at a preliminary stage, I am informed and believe at this time that the putative class as alleged by plaintiffs consists of over 200 employees during the four-year time period at issue. Historically, there has been a low turnover rate in the CSR category; these positions are quite stable and have long-term employees.

8.    Given my knowledge and understanding, I can present the following alternative scenarios to establish federal jurisdiction in this matter.

/ / /

/ / /

/ / /

/ / /

/ / /

2

1      9.     I am informed and believe that plaintiffs are seeking compensation for meal and rest

2  periods that were allegedly not provided over the last four years in violation of California Labor Code

3  section 226.7. I am informed and believe that plaintiffs allege they were required to work in excess of

4  five hours per day without receiving a meal period of at least 30 minutes and were not provided with a

5  ten-minute rest period every four hours of work. I am informed and believe and for purposes of this

6  motion only, to the extent that plaintiffs can prove a violation of California Labor Code section 226.7,

7  each putative class member may be entitled to an hour of compensation for each missed meal period

8  and an hour of compensation for each day that a rest period was missed (i.e. a total of two hours of

9  compensation per day where no meal and rest periods were received). Assuming only for the sake of

10  this calculation that plaintiffs prove such a violation, for the purposes of estimating the amount of

11  compensation at issue for the alleged missed meal and rest periods, I have assumed an hourly rate of

12  $15.00 per hour for each employee. This is based on a privileged review of compensation data for

13  CSRs. Based on this assumption, I have made the following estimates:

14      (a)    Because I can estimate based on a privileged review that there are in excess of 200

15  class members, I will offer a conservative assumption of a 200-member class size. As such, assuming

16  that each putative class member was not provided with meal and rest periods on any day for four years

17  (assuming 260 work-days in a year), and assuming that each putative class member is entitled to an

18  hour of compensation for each missed meal period and an hour of compensation for each day that a

19  rest period was missed (i.e. a total of two hours of compensation per day where no meal and rest

20  periods were received), the total approximate compensation is $6,240,000.00 (200 x $15/hour x 2

21  hours x 260 days/year x 4 years). Using the same calculation method, and assuming that plaintiffs can

22  prove a violation, but instead assuming an hourly rate of $17.00, the total approximate compensation

23  for missed meal and rest periods is $7,072,000.00 (200 x $17/hour x 2 hours x 260 days/year x 4

24  years).

25  / / /

26  / / /

27  / / /

28  / / /

Case No. _____
DECLARATION OF LANCE WESTPHAL IN
SUPPORT OF NOTICE OF REMOVAL

1    (b)    Taking into consideration the possibility that not all putative class members were

2  employed for the entire four-year period and that they may have been provided some meal and rest

3  periods, the following calculation assumes 200 putative class members missing meal and rest periods

4  everyday for two years (again, assuming a 260-day work-year) at a rate of $15.00 per hour. Based on

5  these assumptions, the total approximate compensation for violations of Labor Code section 226.7 is

6  $3,120,000.00 (200 x $15/hour x 2 hours x 260 days/year x 2 years). Using the same calculation

7  method, but instead assuming an hourly rate of $17.00, and assuming that plaintiffs can prove a

8  violation, the total approximate compensation for missed meal and rest periods is $3,536,000.00 (200

9  x $17/hour x 2 hours x 260 days/year x 2 years).

10    10.    I am informed and believe that plaintiffs are also seeking compensation for alleged

11  missed overtime compensation in violation of Labor Code section 510 over the last four years. I am

12  informed and believe and for purposes of this motion only, to the extent that plaintiffs can prove a

13  violation of California Labor Code section 510, each putative class member may be entitled to time-

14  and-a-half for each hour of overtime worked for hours worked over eight and under 12 per work-day.

15  Assuming only for the sake of this calculation that plaintiffs prove such a violation, assuming that

16  each putative class member, on average, worked five hours of overtime per week, and assuming an

17  hourly rate of $15.00 per hour (which equates to $22.50 per hour of overtime), I have made the

18  following estimates:

19    (a)    Assuming that the class has 200 putative members based on a privileged review, and

20  assuming that each putative class member worked five hours of overtime a week for four years

21  (assuming 52 work-weeks in a year), the total approximate compensation is $4,680,000.00 (200 x

22  $22.50/hour x 5 hour/week x 52 weeks/year x 4 years). Using the same calculation method, but

23  instead assuming an hourly rate of $17.00 (which equates to $25.50 per hour of overtime), and

24  assuming that plaintiffs can prove a violation, the total approximate compensation for overtime is

25  $5,304,000.00 (200 x $25.50/hour x 5 hours/week x 52 weeks/year x 4 years).

26  / / /

27  / / /

28  / / /

1    (b)    Taking into consideration the possibility that not all putative class members were

2    employed for the entire four-year period and that they may have worked less than five hours of

3    overtime each week during the four-year period, the following calculation assumes 200 putative class

4    members who worked on average five hours of overtime each week for two years (again, assuming a

5    52-week work year) at a rate of $15.00 per hour (which is $22.50 per hour for overtime purposes).

6    Based on these assumptions, the total approximate compensation for violations of Labor Code section

7    510 is $2,340,000.00 (200 x $22.50/hour x 5 hour/week x 52 weeks/year x 2 years).  Using the same

8    calculation method, but instead assuming an hourly rate of $17.00 (which equates to $25.50 per hour

9    of overtime), and assuming that plaintiffs can prove a violation, the total approximate compensation

10    for overtime is $2,652,000.00 (200 x $25.50/hour x 5 hours/week x 52 weeks/year x 2 years).

11    11.    Under each scenario, the amount in controversy will be met.  For example, under the

12    most conservative scenario using $15.00 per hour (200 class members missed half of their meal and

13    rest periods and worked five hours of overtime per week), the amount in controversy is $5,460,000.00

14    ($3,120,000 + $2,340,000).  Under the other scenario using $15.00 per hour (200 class members

15    missed all meal and rest periods and they worked 5 hours of overtime per week for four years), the

16    amount in controversy is $10,920,000.00 ($6,240,000.00 + $4,680,000.00).

17    12.    Under the most conservative scenario using $17.00 per hour (200 class members

18    missed half of their meal and rest periods and worked five hours of overtime per week), the amount in

19    controversy is $6,188,000.00 ($3,536,000.00 + $2,652,000.00).  Under the other scenario using $17.00

20    per hour (200 class members missed all meal and rest periods and they worked five hours of overtime

21    per week for four years), the amount in controversy is $12,376,000.00 ($7,072,000.00 +

22    $5,304,000.00).

23    13.    In sum, the estimated range is $5,460,000.00 to $12,376,000.00.  This estimate is

24    conservative.  This amount does not include a calculation for restitution, injunctive relief, or attorneys'

25    fees.  It also does not include any liquidated damages pursuant to Labor Code section 1194.2.  If these

26    additional amounts were added to the total amount, that amount obviously would be higher.

27

28

Case No. _____
DECLARATION OF LANCE WESTPHAL IN
SUPPORT OF NOTICE OF REMOVAL

1    I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct and that this declaration was executed this ___6___ day of March 2008, at

3 _San Diego_, California.

4

5                Lance Westphal, Declarant

6

7 101077669.2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. _____
DECLARATION OF LANCE WESTPHAL IN
SUPPORT OF NOTICE OF REMOVAL