1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   LLOYD MARTIN, et al., individually and on          CASE NO. 08cv440-MMA (JMA)
     behalf of others similarly situated, and,
12
     GRADY O'BRYANT, et al., individually
13   and on behalf of others similarly situated,

14                                    Plaintiffs,

15               vs.                               **ORDER ON FINAL APPROVAL**
                                                   **OF CLASS ACTION SETTLEMENT,**
16                                                 **JUDGMENT AND DISMISSAL**

17   AMERIPRIDE SERVICES, INC., et al.,

18                                    Defendants.

19            <u>**ORDER ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

20          On June 6, 2011, this matter came before the Court on Plaintiffs' Motion for Final Approval

21   of Class Settlement, Approval of Attorneys Fees and Costs, and Class Representative Service

22   Payment [Doc. No. 57].  At the hearing, the Court advised the parties of its tentative decision to

23   grant Plaintiffs' motion.  For the following reasons, the Court **AFFIRMS** its tentative ruling and

24   **GRANTS** Plaintiffs' motion in its entirety.

25                                    <u>B<small>ACKGROUND</small></u>

26          The operative pleading in this case is the First Amended Consolidated Complaint (the

27   "complaint") [Doc. No. 35], filed on July 1, 2009.  Individually named plaintiffs acting as class

28   representatives include: Lloyd Martin, Kirk Sword, Daniel Gore, Grady O'Bryant, Jorge Mejia, Paul

1   Luna, Kye Jacoby, and Rigo Martinez.  These individuals were employed by Defendant AmeriPride

2   Services, Inc. as route delivery drivers (holding the official title of customer service representatives

3   or "CSRs") during the class period commencing on January 15, 2004.  AmeriPride is in the business

4   of linen supply, supplying to customers clean laundered towels, linens, uniforms, wearing apparel,

5   and other items.  AmeriPride employs CSRs to operate delivery trucks to supply its products and

6   services to its local customers on routes assigned to them by AmeriPride.

7          Plaintiffs brought this class action against their employer AmeriPride alleging that they and

8   other CSRs are mis-classified as "exempt" employees and are thus entitled to unpaid overtime wages

9   and other remedies under California law.  Specifically, Plaintiffs' complaint alleges that AmeriPride

10  violated California state law, and alleges five causes of action under the California Labor Code and

11  California Business and Professions Code for (1) overtime pay for introductory employees; (2)

12  overtime pay for regular full-time employees; (3) meal periods; (4) rest periods; and (5) unfair

13  business practices.

14                                      **P**ROCEDURAL **H**ISTORY

15         This matter began as two separate purported class action law suits filed in California state

16  court by Martin, Sword, and Gore in San Diego County, and O'Bryant in Sacramento County.

17  AmeriPride answered the complaint in each case, and simultaneously removed the Martin, et al.

18  action to this Court and the O'Bryant action to the United States District Court for the Eastern

19  District of California.  The O'Bryant court transferred that action to this Court.  On October 15,

20  2008, this Court ordered the two actions consolidated.  The operative complaint was filed on July 1,

21  2009.

22         On September 7, 2010, the parties notified the Court that the action had settled and the Court

23  ordered the parties to file a motion for preliminary approval of class settlement.  *See* Doc. No. 46.

24  On December 3, 2010, Plaintiffs filed an unopposed motion for preliminary approval.  *See* Doc. No.

25  51.  On January 4, 2011, the Court granted the motion and approved a preliminary settlement,

26  authorized the notice process, and scheduled a hearing on final approval.  *See* Doc. No. 55.

27         On April 11, 2011, Plaintiffs filed the motion for final approval currently pending before the

28  Court.  *See* Doc. Nos. 57-59.  On April 15, 2011, AmeriPride filed an opposition to the motion,

1  asserting that Plaintiffs "are now seeking to fundamentally alter the terms of the agreed-upon

2  Settlement Agreement."  *See*  Doc. No. 60.  According to AmeriPride, disputes developed between

3  the parties with respect to material terms of the Settlement Agreement, including the definition of

4  the class, the effective date of the Settlement Agreement, the timing for deposit of settlement funds,

5  the release of claims, and payment of employment taxes.

6         In light of the issues raised in AmeriPride's opposition, the Court vacated the Final Approval

7  Hearing which had been previously set for April 25, 2011 and rescheduled the hearing for June 6,

8  2011, in order to allow counsel for the parties to meet and confer regarding the outstanding disputes

9  related to the Settlement Agreement.  *See* Doc. No. 61.  On May 27, 2011, in compliance with the

10 Court's order, the parties filed a Joint Statement advising the Court regarding the status of

11 settlement, confirming that all disputes except one have been resolved, and setting forth each party's

12 position on the sole remaining dispute – the effective date of the Settlement Agreement.  Because

13 the parties indicated in the Joint Statement that they would seek the Court's determination on the

14 issue, and the dispute did not threaten the integrity of the Settlement Agreement, the Court found the

15 settlement of this class action ready for final approval.

16                          **TERMS OF THE SETTLEMENT**

17         1.      Settlement Class

18         This Court provisionally certified the settlement class as follows: "Any individual who was

19 employed as Customer Service Representative (including introductory and/or probationary

20 Customer Service Representatives) in California for AmeriPride during the Class Period (January

21 15, 2004 through December 31, 2009)."  Several class members have claimed compensation for time

22 worked during the class period as relief drivers, wholesale drivers or "route jumpers."  Subsequent

23 to their meet and confer efforts during the month of May, the parties agreed that the settlement class

24 does not include these types of drivers because they are in a different payroll category and are

25 compensated differently than CSRs, except as to those class member CSRs who may have been

26 relief and/or wholesale drivers at times during the class period.  *See Joint Hearing Statement*, Doc.

27 No. 62.

28 ///

1    On Friday, May 20, 2011, the Settlement Administrator mailed responses to claimants who

2    filed claims or disputes indicating whether the claim or dispute was accepted or denied and the basis

3    for the denial consistent with the parties' agreed upon definition of the Settlement Class.

4    Subsequent to their meet and confer efforts during the month of May, the parties also agreed

5    that all named plaintiffs have agreed to a comprehensive release that releases all claims against

6    AmeriPride "arising out of their employment with Defendant or termination thereof and/or any other

7    event, act, occurrence, or omission taking place on or before the Settlement Effective Date…" *See*

8    *Joint Hearing Statement*, 4.  With respect to the unnamed class members, the parties agree that all

9    class members – as defined above – are releasing any and all wage claims that were brought or could

10   have been brought against AmeriPride during the class period.  The parties agree that AmeriPride

11   employees who are not part of the settlement class are not releasing any claims.

12       2.    Settlement Terms

13   AmeriPride has agreed to pay a gross settlement amount of $5,250,000 (five million two

14   hundred fifty thousand dollars) ("the common fund").  Upon final approval, the common fund will

15   be allocated among payments to class members, administrative costs, attorneys fees, litigation costs,

16   and class representative service awards.  The entire fund is non-reversionary and will be distributed

17   to individual class members on a pro rata basis based on the time and location of where the class

18   member worked as well as the number of weeks worked.

19   Subsequent to their meet and confer efforts during the month of May, the parties agreed that

20   the Settlement Agreement states that AmeriPride will pay the employer taxes on the portion of each

21   Settlement Payment deemed to be wages, which is fifty percent (50%) of the Settlement Payment.

22   *See Joint Hearing Statement*, 5.  This portion will be issued via W-2 form.  The other portion is for

23   penalties and interests for which no taxes are due because it will be issued via 1099-MISC form.

24   The employer taxes will be paid by AmeriPride from monies separate and apart from the common

25   fund.

26   The class representatives will receive an enhancement award of $18,500.  The parties

27   stipulate to award attorneys fees to Class Counsel in the amount of 25% of the common fund

28   ($1,312,500), to be split equally between Wagner & Jones LLP and Tosdal Smith Steiner & Wax

LLP, plus actual litigation costs of $16,891.77 to Wagner & Jones and $14,720.42 to Tosdal Smith Steiner & Wax.

### 3.   Effective Settlement Date

The meaning of the term "Effective Settlement Date" remains in dispute.  The parties have requested that the Court determine the issue.  The "Effective Settlement Date" is defined in the Settlement Agreement as:

> Effective Settlement Date: The Effective Settlement Date is the date on which this Settlement will become final and effective, which shall be upon the occurrence of all of the following events:
>
> (a) entry of the Preliminary Approval Order;
>
> (b) the occurrence of the Final Settlement Hearing;
>
> (c) entry of the Final Judgment; and
>
> (d) the Final Judgment becomes final, which shall mean,
>
> (i) the date the Final Judgment is signed by the Court if there are no objections to the settlement; or
>
> (ii) if there are objections to the settlement which are not withdrawn, and if an appeal, review or writ is not sought from the Judgment, the date one day after which the Final Judgment is no longer subject to judicial review or other challenge; or
>
> (iii) if a timely notice of appeal is filed, the day after the Final Judgment is affirmed, or the appeal or review is dismissed or denied and the Final Judgment is no longer subject to judicial review or other challenge.

"A settlement agreement is treated as any other contract for purposes of interpretation." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.), cert. denied sub nom., *Paymaster Corp. v. American Bankers Ins. Co. of Fla.*, 506 U.S. 1022 (1992); *see also Winet v. Price*, 4 Cal. App. 4th 1159, 1164 (Cal.Ct.App. 1992).  Under California law, contract interpretation is a question of law.  *SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Ins. Co.*, 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004); *see also Parsons v. Bristol Develop. Co.*, 62 Cal. 2d 861, 44 Cal. Rptr. 767, 402 P.2d 839 (Cal. 1965).  "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."  *Byrne v. Laura*, 52 Cal. App. 4th 1054, 60 Cal. Rptr. 2d 908, 916 (Cal. Ct. App. 1997).  "When a contract is reduced to writing, the parties'

1  intention is determined from the writing alone, if possible." *Founding Members of the Newport*

2  *Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 135 Cal. Rptr. 2d

3  505, 513 (Cal. Ct. App. 1992). "If contractual language is clear and explicit, it governs." *Bank of*

4  *the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P.2d 545, 552 (Cal. 1992). A

5  court must interpret contractual language in its ordinary sense, unless terms are used by the parties

6  in a technical sense, or a special meaning is given to them by usage. Cal. Civ. Code § 1638.

7          Plaintiffs argue that "the express terms of subsection (d)(i) above states that the 'Final

8  Judgment becomes final' on 'the date the Final Judgment is signed by the Court [because] there are

9  no objections to the settlement.' It is undisputed that no objections to the settlement have yet been

10  filed. This means that the Effective Settlement Date is the date of entry of final judgment." *See*

11  *Joint Hearing Statement*, 6. AmeriPride counters that the Effective Settlement Date is not only after

12  the Final Judgment is signed by the Court, but *also* after the time for an appeal has expired. *Id.* at 8.

13          First, the Court finds that the use of the word "or" to transition between subsections (d)(i),

14  (ii), and (iii), does not support AmeriPride's interpretation of the contract language. Merriam

15  Webster's Eleventh Collegiate Dictionary (2005) defines "or" as "used as a function word to

16  indicate an alternative." Here, use of the word "or" indicates that subsections (d)(i), (ii), and (iii),

17  above, are alternatives to one another, and as such, the Final Judgment becomes final as defined by

18  one subsection – not all three, as AmeriPride insists. If the word "and" instead of "or" had been

19  used, the language of the contract would support AmeriPride's position, but the result would be

20  unworkable because the three conditions in subsections (d)(i), (ii), and (iii) cannot obtain

21  simultaneously.

22          The parties confirmed during the final approval hearing that there are no objections to the

23  settlement. Subsection (d)(i) expressly contemplates such a situation and provides that the Final

24  Judgment becomes final "the date the Final Judgment is signed by the Court *if there are no*

25  *objections to the settlement*." (emphasis added). Unlike subsections (d)(i) (no objections) and

26  (d)(ii) (objections), subsection (d)(iii), which provides the meaning of the word "final" in the event

27  timely notice of appeal is filed, does not expressly contemplate either the presence or absence of

28  objections to the settlement, as it does not even contain the word "objections." Seizing on this,

1    AmeriPride argues that subsection (d)(iii) applies irrespective of whether there are objections to the

2    settlement and therefore applies here.

3          AmeriPride's interpretation of the contract language is untenable because the Effective

4    Settlement Date cannot at once be the date the Court signs the Final Judgment (subsection (i)) *and*

5    some undetermined date in the future (subsection (iii)), as the two are mutually exclusive.[1]

6    Furthermore, AmeriPride's interpretation of subsection (d)(iii) renders subsection (d)(i) superfluous.

7    The Court will not conclude that the carefully negotiated Settlement Agreement in this case contains

8    unnecessary or extraneous language, particularly when that language bears directly upon the deposit

9    and distribution of millions of dollars.  Subsection (d)(iii) must be interpreted as impliedly

10   contemplating objection to the settlement, from which a timely notice of appeal could be filed.

11   Otherwise the word "final" has no clear meaning, when the terms of the Settlement Agreement

12   obviously intended the opposite result.

13         Accordingly, the Court finds that because there are no objections to the settlement, the Final

14   Judgment in this case becomes final pursuant to subsection (d)(i) – the date the Final Judgment is

15   signed by the Court.  The preliminary approval order has been entered and the final settlement

16   hearing occurred on June 6, 2011.  Therefore, upon entry of the Final Judgment and on the date the

17   Final Judgment is signed by the Court, the Settlement will become final and effective.

18   ///

19   ///

20   ///

21

22

---

23      [1] By way of contrast, at least one court has approved a final settlement wherein the settlement

agreement included a definition of the effective date of settlement as: "The effective date shall be the

24   date of final approval if no objections are filed to the settlement. If objections are filed and overruled,

and no appeal is taken of the final approval order, then the effective date of final approval shall be

25   sixty-five (65) days after the district court enters final approval. If an appeal is taken from the Court's

overruling of objections to the settlement, then the effective date of final approval shall be twenty (20)

26   days after the appeal is withdrawn or after an appellate decision affirming the final approval decision

becomes final. No money will be distributed unless and until the effective date of final approval occurs."

27   *Chiaramonte v. Pitney Bowes, Inc.* 2008 WL 510765 (S.D.Cal.). The terms of the *Chiaramonte*

settlement agreement were clear that an appeal would only effect the finality of the judgment and

28   subsequent distribution of funds in the event objections were filed.  Absent any objections, the

settlement became effective on the date of final approval, period. The settlement agreement was written

such that the three possibilities were plainly mutually exclusive.

### MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

1.    Class Certification

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a).  Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).  In the present case, the Court had previously preliminarily certified the following California class:

> "Any individual who was employed as Customer Service Representative (including introductory and/or probationary Customer Service Representatives) in California for AmeriPride during the Class Period (January 15, 2004 through December 31, 2009)."

At that time, the Court concluded that the proposed classes satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  *See* Doc. No. 55.  The Court also found that the proposed classes satisfied the predominance and superiority requirements of Rule 23(b)(3).  Based on its previous findings, the Court certifies the class for the purpose of settlement.

2.    The Settlement

a)    Legal Standard

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendant have not colluded in settling the case. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, adequate and reasonable" under Rule 23(e).  Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately

1   represented during settlement negotiations; and (6) the reaction of the class to the proposed

2   settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  The Court need only consider

3   some of these factors–namely, those designed to protect absentees.  *See Molski v. Gleich*, 318 F.3d

4   937, 954 (9th Cir. 2003) (overruled in part on other grounds).

5        Judicial policy favors settlement in class actions and other complex litigation where

6   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *In*

7   *re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).  On

8   November 6, 2009, the parties and their counsel attended one full day mediation, which was

9   conducted by a highly qualified mediator.  Subsequent to the mediation, the parties continued

10  negotiations with the assistance of the mediator, which resulted in an oral agreement on the common

11  fund settlement and stipulated Settlement Agreement currently before the Court for final approval.

12  *See Kopfman Decl'n* ¶¶ 35-36.

13             b)        Analysis

14  *(1) The strength of the case, and risk, expense, complexity and likely duration of further litigation*

15       Regarding the strength of Plaintiffs' case, the Court must "determine whether the decision to

16  settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case."

17  *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995).  Here,

18  Plaintiffs assert that the proposed settlement is both fair and reasonable in light of AmeriPride's

19  available legal and factual grounds for defending against the asserted claims.  For example,

20  Plaintiffs contend that, absent settlement, AmeriPride would have asserted a defense that Plaintiffs

21  and the class members are exempt from overtime compensation requirements.  *See Kopfman Decl'n*

22  ¶¶ 41-45.  Such a defense would present a serious threat to Plaintiffs' claims, as well as create

23  uncertainty as to the appropriateness of class certification.  Plaintiffs also asserts that the risk of

24  further litigation is significant, as is the likely duration of further litigation. *Id.* ¶ 47.  Given these

25  risks, the actual recovery through settlement confers substantial benefits on the class that outweigh

26  the potential recovery through full adjudication.

27  *(2) The stage of the proceedings (investigation, discovery and research completed)*

28       In the context of class action settlements, as long as the parties have sufficient information to

make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir.1982)).  Here, the parties engaged in extensive formal and informal discovery, as is reflected by looking at the docket of this case.  The parties participated in a number of discovery conferences with the assigned magistrate judge.  Depositions were conducted, experts hired and consulted, and so on.  *See Kopfman Decl'n* ¶¶ 48-49.

*(3) The settlement amount*

To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation.  *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459.  While settlement amounts that are close to the plaintiffs' estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair.  *Id.* (finding settlement amount constituting one-sixth of the potential recovery was fair and adequate).  Thus, district courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation.  *See, e.g., Glass v. UBS Fin. Serv., Inc*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25 to 35% of the claimed damages to be reasonable); *Williams v. Costco Wholesale Corp*., No. CV-02-2003 IEG, 2010 U.S. Dist. LEXIS 67731, 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (finding settlement amount constituting approximately 75.6% of the plaintiffs' claimed losses from unpaid overtime pay to be adequate).

Here, the common fund represents approximately 36% of the total potential damages in the case.  *See Kopfman Decl'n* ¶ 49.  The average class member will receive a settlement payment of $11,552.31.  In addition, AmeriPride has implemented methods of now compensating CSRs in compliance with California's wage and hour laws, such that class members who are still employed by AmeriPride will continue to reap the benefits of settlement by receiving full overtime compensation.  The amount offered in settlement is adequate.

*(4) Whether the class has been fairly and adequately represented during settlement negotiations*

1    Class Counsel have significant experience in both the substance of wage and hour claims as

2    well as the procedures for class and collective actions.  *See Kopfman Decl'n ¶¶ 4-6.*  As such, their

3    support of the settlement should be accorded significant consideration.  *See, e.g., Nat'l Rural*

4    *Telcoms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded

5    to the recommendation of counsel, who are most closely acquainted with the facts of the underlying

6    litigation. This is because parties represented by competent counsel are better positioned than courts

7    to produce a settlement that fairly reflects each party's expected outcome in the litigation") (internal

8    quotation marks and citations omitted).

9    *(5) The reaction of the class to the proposed settlement*

10    The Ninth Circuit has held that the number of class members who object to a proposed

11    settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832,

12    837 (9th Cir. 1976).  The absence of any objector strongly supports the fairness, reasonableness, and

13    adequacy of the settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

14    164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be

15    viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*,

16    485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed

17    no opposition).  Here, no class members have objected to the Settlement Agreement and no class

18    member has opted out.  *See Kopfman Decl'n ¶ 52.*

19    3.    Conclusion

20    The Court **GRANTS** the motion for final approval, finding that the Settlement Agreement is

21    "fair, adequate and reasonable" under Rule 23(e).

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

1

<u>MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS</u>

2

      1.     <u>Relevant Law</u>

3

      Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class

4

action, the court may award reasonable attorneys fees and nontaxable costs that are authorized by

5

law or by the parties' agreement." Fed. R. Civ. P. 23(h). California recognizes the common fund

6

doctrine for the award of attorneys fees. Under California and Ninth Circuit precedent, a court has

7

discretion to calculate and award attorneys fees using either the lodestar method or the

8

percentage-of-the-fund method. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253, 110

9

Cal. Rptr. 2d 145 (2001); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

10

      The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for

11

attorneys fees awarded under the percentage method, with 20 to 30% as the usual range in common

12

fund cases where the recovery is between $50 and 200 million. *Vizcaino*, 290 F.3d at 1047. Other

13

case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in

14

cases in which the common fund is relatively small. See Rubenstein, Conte and Newberg, Newberg

15

on Class Actions at § 14:6. Indeed, California cases in which the common fund is small tend to

16

award attorneys fees above the 25% benchmark. *See Craft v. County of San Bernardino*, 624 F.

17

Supp. 2d 1113, 1127 (C.D. Ca. 2008) (holding attorneys fees for large fund cases are typically under

18

25% and cases below $10 million are often more than the 25% benchmark). More particularly,

19

courts may award attorneys fees in the 30-40% range in wage and hour class actions that result in

20

recovery of a common fun under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D.

21

482, 491-92 (E.D. Ca. 2010) (citing to five recent wage and hour class actions where federal district

22

courts approved attorney fee awards ranging from 30 to 33%); *Singer v. Becton Dickinson and Co.*,

23

2010 U.S. Dist. LEXIS 53416, 2010 WL 2196104, * 8 (S.D. Ca. June 1, 2010) (approving attorney

24

fee award of 33.33% of the common fund and holding that award was similar to awards in three

25

other wage and hour class action cases where fees ranged from 30.3% to 40%); *Romero v.*

26

*Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841 (E.D. Ca. Nov. 14,

27

2007).

28

///

1    2.    <u>Analysis</u>

2    Regardless of whether the court uses the percentage approach or the lodestar method, the

3    main inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th

4    Cir. 2000).  The Ninth Circuit has identified a number of factors that may be relevant in determining

5    if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required

6    and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel;

7    and (6) the awards made in similar cases.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50

8    (9th Cir. 2002).  An explanation is necessary when the district court departs from the "benchmark"

9    of 25% of recovery.  *Powers*, 229 F.3d at 1256-57.  The award sought in this case equals 25% of the

10   common fund.

11   Here, the results achieved in this case were favorable.  The risks of litigation were real and

12   substantial.  The complexity and duration of the case, coupled with the intensity of settlement

13   negotiations, weighs in favor of awarding the 25 percent "benchmark" amount that counsel request

14   here, for a total award of $1,312,500 plus actual costs and expenses incurred prior to entry of final

15   approval.  *See Kopfman Decl'n* ¶ 57.  Class Counsel took this case on a contingent fee basis and had

16   to forego other financial opportunities to litigate it for more than three years.  *See Kopfman Decl'n*

17   ¶¶ 60-61.  Fifth, the request for attorneys fees in the amount of 25% of the common fund falls within

18   the typical range of 20 to 50% awarded in similar cases, and is lower than many other awards where

19   counsel worked on a contingent basis.  *See, e.g., Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF

20   (Ex), Doc. No. 77, P 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $ 5.6 million wage and

21   hour class action); *Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc. No. 48, P 13

22   (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $ 16 million wage and hour class action);

23   *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct.

24   10, 2006) (awarding a 40% fee on a $ 3.75 million wage and hour class action).  Finally, no class

25   members have objected to the attorneys fees.

26   3.    <u>Conclusion</u>

27   The Court **APPROVES** an award of attorneys fees equal to 25% of the value of the common

28   fund as well as Class Counsel's request for litigation costs and expenses in the requested amount.

## CLASS REPRESENTATIVE SERVICE PAYMENTS

### 1.    Relevant Law

In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  *See, e.g., Carter v. Anderson Merchs., LP*, No. EDCV 08-0025-VAP, 2010 U.S. Dist. LEXIS 55629, 2010 WL 1946757, at *3 (C.D. Cal. May 11, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG, 2010 U.S. Dist. LEXIS 67731, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010).

### 2.    Analysis

No class members have objected to Plaintiffs' intent to seek an enhancement award of $18,500.  The $18,500 incentive award is also well within the acceptable range awarded in similar cases.  *See, e.g., Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation").  Each named plaintiff has provided a declaration to the Court summarizing the time and resources expended in assisting with the preparation for and litigation of this case.  For example, Plaintiff O'Bryant responded to written discovery requests and assisted in the preparation of initial disclosures.  *See O'Bryant Decl'n* ¶ 15.  O'Bryant also traveled to San Diego twice at personal expense to participate in depositions and the full day mediation, *id.* ¶¶ 16-17, as did the other named plaintiffs.  *See Jacoby Decl'n* ¶¶ 13-14; *Mejia Decl'n* ¶¶ 12-13; *Martinez Decl'n* ¶¶ 11-12; *Luna Decl'n* ¶¶ 11-12; *Martin Decl'n* ¶ 12; *Sword Decl'n* ¶ 8; *Gore Decl'n* ¶ 12.

### 3.    Conclusion

The Court **APPROVES** the service fee award as reasonable.

*///*

1

**C**ONCLUSION

2        The Court **GRANTS** Plaintiffs' motion in its entirety, and finds the proposed settlement of

3  this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e).

4  The Court further finds that the proposed settlement appears to be the product of serious, informed,

5  non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential

6  treatment to any individuals.  The Court finds that the settlement was entered into in good faith; that

7  the settlement is fair, reasonable and adequate; and that Plaintiffs have satisfied the standards for

8  final approval of a class action settlement under federal law.

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

08cv440

1

### JUDGMENT AND ORDER OF DISMISSAL

2      This Court **APPROVES** the settlement and directs the Parties to effectuate the Settlement

3  Agreement according to its terms.

4      The Court **DISMISSES** this case on the merits and with prejudice, pursuant to the terms of

5  the Settlement Agreement.

6      The Court retains continuing jurisdiction over the interpretation, implementation and

7  enforcement of the Settlement Agreement and all orders and judgments entered in connection

8  therewith.

9      If this Judgment and the settlement do not become final and effective in accord with the

10  terms of the Settlement Agreement, then this Judgment and all orders entered in connection

11  therewith shall be deemed null and void and shall be vacated.

12      **IT IS SO ORDERED**.

13  DATED:  June 9, 2011

14

15                              Hon. Michael M. Anello
                                United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28